IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THINH TRAN,<br><br>    Plaintiff,<br><br>  vs.<br><br>DEPARTMENT OF PLANNING FOR THE COUNTY OF MAUI; COUNTY OF MAUI; MAYOR MICHAEL VICTORINO, successor in interest; MICHELE MCLEAN, in her capacity as Director of the Department of Planning; DOES 1–20; JANE DOES 1–20; DOE PARTNERSHIPS 1–20; DOE CORPORATIONS 1–20; DOE ENTITIES 1–20; DOE GOVERNMENTAL UNITS 1–20,<br><br>    Defendants. | CIVIL NO. 19-00654 JAO-RT<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND (2) STAYING THE ACTION |

**ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
AND (2) STAYING THE ACTION**

In this action, Plaintiff Thinh Tran ("Plaintiff") presents multiple challenges

to the legality of Maui County Ordinance No. 3941, which regulates short-term

rental homes.  Defendants Department of Planning for the County of Maui; the

County of Maui; Mayor Michael Victorino; and Michele McLean, Director of the

Department of Planning (collectively, "Defendants") seek dismissal of this action for failure to state a claim. For the following reasons, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss Complaint for Declaratory and Injunctive Relief with Prejudice, ECF No. 18, ABSTAINS pursuant to *Railroad Commissioner v. Pullman*, 312 U.S. 496 (1941), and STAYS this action.

## BACKGROUND

I.    Factual History

In early 1990, the County of Maui and the State of Hawaiʻi approved the development of the Kaanapali Beach Resort, South Mauka, more commonly known as Kaanapali Golf Estates ("KGE"). Compl. ¶ 24. The subdivision approval included a review of the Declaration of Covenants, Conditions and Restrictions for KGE ("CC&R"), and according to Plaintiff, a determination that the uses of the property were consistent with the Maui County Code ("MCC"). *See id.* ¶ 26. Section 27 of the CC&R authorizes owners to lease their units for an initial term of not less than 30 days, unless the board of directors shortens the term. *See id.* ¶ 27. At the inception of KGE, short-term/transient rentals were for terms of less than 30 days under the MCC. *See id.* ¶ 28. Since then, the CC&R and MCC have permitted KGE owners to rent their units for a minimum of 30 days, up to 12 times per year. *See id.* ¶ 31.

2

In 2012, the County of Maui (the "County") adopted Ordinance 3941 to address short-term rental homes.  *See id.* ¶ 54.  It provides:

> "Short-term rental home" means a residential use in which overnight accommodations are provided to guests for compensation, for periods of less than one hundred eighty days, in no more than two detached single-family dwelling units, excluding bed and breakfast homes[.]
>
> "Transient vacation rentals or use" means occupancy of a dwelling or lodging unit by transients for any period of less than one hundred eighty days, excluding bed and breakfast homes and short-term rental homes[.]

Compl. Ex. A, ECF No. 1-1 at 5 (editorial notations omitted).

Plaintiff alleges that the County has identified approved properties unaffected by Ordinance 3941—KGE is not one of them—including condominium projects and planned residential developments located in resort destination areas that are the same nature as KGE, with single family homes, project instruments creating vested short-term rental rights, with many subject to the same residential zoning (R-3) as KGE.  *See* Compl. ¶¶ 47–49.  Other planned communities within the Kaanapali Beach Resort—whether or not they appear on the approved properties list— have been grandfathered or are not subject to Ordinance 3941, such as the adjacent Masters at Kaanapali, and nearby Kaanapali Planation and International Colony Club.  *See id.* ¶ 50.

According to Plaintiff, a vocal minority within KGE sought to enforce the 180-day restriction and urged the County and Defendant Department of Planning

("DP") not to issue short-term rental permits to KGE owners, misrepresenting that the CC&R do not allow rentals of less than 180 days.  *See id.* ¶ 55.  A group of KGE owners then undertook efforts to amend the CC&R to prohibit (1) all rentals less than 180 days and (2) owners from obtaining permits under Ordinance 3941. *See id.* ¶ 58.

In 2013, KGE's developer relinquished control over Kaanapali Golf Estates Community Association, Inc. ("KGECA") to the homeowners.  *See id.* ¶ 59.  Using a purportedly illegal voting member process, a small group of KGE owners that opposed transient vacation rentals assumed control of KGECA and began enforcing a minimum 180-day rental period.  *See id.* ¶ 60.  Employing the same illegal voting process—voting 66% of owners' votes without receiving a signed proxy from the owners—the owners group adopted a 2014 Rental Amendment, which changed the minimum rental period from 30 to 180 days.[1]  *See id.* ¶ 61. Plaintiff claims that this owners group now insists that the MCC has never authorized rentals for periods of 30 days or more in resort communities and interferes with any owner seeking a permit for short-term transient rentals.  *See id.* ¶ 62.

---

[1]  An arbitration panel since determined that the Amendment was an invalid and unconscionable effort to change Plaintiff's entitlements.  *See* Compl. ¶ 61.

Plaintiff represents that he purchased property within KGE in reliance on the CC&R and zoning, and structured financing with the intention to lease his unit for periods of 30 days or more. *See id.* ¶ 66. He believes that DP, acting independently or at the direction of Director Michele McLean or at the request of the owners group, may enforce Ordinance 3941 against him for renting his units for less than 180-day periods and fine him up to $10,000 per day. *See id.* ¶ 69.

Plaintiff alleges that DP has issued violation notices to him and others, imposing excessive fines based on internet searches that produced links to potential vacation rental advertisements, which Ordinance 3941 treats as prima facie evidence of an unlawful short-term rental home, thereby impermissibly placing the burden on property owners to prove that violations did not occur. *See id.* ¶¶ 72–73. Plaintiff challenges Ordinance 3941's failure to recognize the daily rate presentation on hosting platforms for rentals exceeding 30 day or even 180 days— both of which are legal—and using such information to cite him and others for illegal advertising and impose related fines, which chills free speech. *See id.* ¶¶ 74–75. Plaintiff also challenges Ordinance 3941's failure to provide a pre-deprivation hearing before the imposition of fines, as well as the lack of any prompt and independent post-deprivation review. *See id.* ¶ 75.

II.   <u>Procedural History</u>

Plaintiff commenced this action on December 6, 2019, asserting the

following claims:  (1) declaratory relief pursuant to 28 U.S.C. § 2201 (Count I); (2) due process violations of the Fifth Amendment and Hawaiʻi Constitution, Article I, § 5 (Counts II and III); (3) excessive fines in violation of the Eighth Amendment and the Hawaiʻi Constitution, Article I, § 12 (Counts IV and V); (4) free speech violations under the First Amendment and Hawaiʻi Constitution, Article I, § 4 (Counts VI and VII); (5) violation of Hawaiʻi Revised Statutes ("HRS") § 46-4 (Count VIII); and (6) violation of the Hawaiʻi Administrative Procedures Act (Count IX).  Compl. at 28–40.  Plaintiff prays for declaratory, equitable, and injunctive relief, along with attorneys' fees and costs.  *Id.* at 40–41.  Plaintiff invokes jurisdiction pursuant to 42 U.S.C. §§ 1331, 1332, 1343, and 1367.  *Id.* ¶¶ 18–20.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law,

unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend

unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

DISCUSSION

Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because all claims are premised on the flawed theory that he has been and continues to be entitled to use his properties for short-term rentals within KGE. Defendants also challenge Plaintiffs' reliance on multiple exhibits that are not properly before the Court.  Plaintiff responds that the County essentially approved the CC&R, thereby creating vested rights for KGE owners.

I.   Judicial Notice

As a preliminary matter, the Court addresses Defendants' request to take judicial notice of documents they attached to their Motion and to strike Plaintiff's arguments regarding and reliance on the exhibits attached to the Opposition, which are not readily subject to judicial notice.  Pursuant to Federal Rule of Evidence ("FRE") 201, courts can take judicial notice of facts not subject to reasonable dispute because they are generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Under Rule 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A Rule 12(b)(6) motion is treated as a motion

8

for summary judgment if matters outside the pleadings are considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  In addition, courts may consider evidence necessarily relied upon by the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder*, 450 F.3d at 448 (citations omitted).

The Court finds that taking judicial notice of the exhibits attached to the Motion is appropriate because they are publicly available ordinances and rules, most of which are available online, and can be readily determined from accurate sources.  Moreover, Plaintiff himself challenges Ordinance 3941 and references multiple of the other ordinances in his Complaint.  The Court therefore takes judicial notice of the documents without converting the Motion into a motion for summary judgment.

However, Plaintiff has *not* requested judicial notice of the exhibits attached to his Opposition and the Court declines to take judicial notice of the same.  Nor has Plaintiff attempted to authenticate the exhibits or explain how they qualify for

judicial notice.  Instead, he introduced the exhibits through another KGE owner.

Defendants contend that the owner is not a custodian of records and cannot

properly authenticate the exhibits.  Given Plaintiff's failures and Defendants'

objection, the Court declines to consider the exhibits.[2]

II.    Standing

Defendants did not initially challenge Plaintiff's standing.  Because

"standing is an essential and unchanging part of the case-or-controversy

requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992) (citation omitted), it is well established that "whether or not the parties raise

the issue, '[f]ederal courts are *required* sua sponte to examine jurisdictional issues

such as standing.'"  *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035

(9th Cir. 2008) (alteration in original) (citations and some internal quotation marks

omitted).  In response to the Court's inquiry about standing, Defendants argue that

Plaintiff has not pled an injury in fact and without one, there can be no causal

connection to their conduct, nor a likelihood of redressability.

Article III of the Constitution limits federal courts' jurisdiction to certain

"Cases" and "Controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408

(2013).  A plaintiff must demonstrate three elements to establish that he or she has

---

[2]  Ultimately, the exhibits are unnecessary for the disposition of this Motion.

"standing" to sue in federal court:  (1) "injury in fact" that is "concrete and particularized" and "actual and imminent"; (2) the injury must be fairly traceable to the defendant's conduct; and (3) the injury can be redressed through adjudication.  *Lujan*, 504 U.S. at 560–61; *see Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016).  As the party invoking federal jurisdiction, the plaintiff must establish these elements.  *See Spokeo*, __ U.S. __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).   At the pleading stage of a case, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518, (1975)) (footnote omitted).   To determine standing for a plaintiff asserting facial claims, courts "'accept as true all material allegations in the complaint' and 'construe the complaint in favor of the complaining party.'"  *Carson Harbor Vill. Ltd. v. City of Carson*, 37 F.3d 468, 476 (9th Cir. 1994) (quoting *Pennell v. San Jose,* 485 U.S. 1, 7 (1988)), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A plaintiff exclusively seeking declaratory and injunctive relief must additionally "show a very significant possibility of future harm."  *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted). A plaintiff facially challenging a statute in a declaratory judgment action must also "demonstrate that he 'has sustained or is imminently in danger of sustaining a

11

direct injury' as the result of the statute." *Carson Harbor*, 37 F.3d at 475–76 (citation omitted).

    A.    <u>Injury in Fact</u>

    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, __ U.S. __, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  Allegations of possible future injury are insufficient; the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (citations omitted).  A plaintiff may comply with the injury-in-fact requirement by alleging a future injury, but only if he or she "is *immediately* in danger of sustaining some *direct* injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (alteration in original) (citation omitted).

    Here, Plaintiff asserts contradictory allegations—on the one hand (in the background section of his Complaint) stating that DP *has issued violation notices to him and others, imposing excessive fines* based on internet searches that produced links to potential vacation rental advertisements, Compl. ¶¶ 72–73, but on the other hand (in Counts IV and V) requesting declaratory and injunctive relief

*before* fines can be imposed.  *Id.* ¶¶ 110, 116.  And with respect to his free speech claims (Counts VI and VII), Plaintiff claims to have

> a reasonable belief and apprehension that the Director **will deem illegal** what is actually legal rental activity and advertising of units . . . subjecting [him] to fines of $10,000 per day, create uncertainty and a chilling impact on the free speech of Plaintiff, and others similarly situated, and the Court should issue declaratory and injunctive relief against [Ordinance 3941's] enforcement.

*Id.* ¶ 121 (emphases added).  Plaintiff also accuses Defendants of applying Ordinance 3941 while simultaneously alleging that Defendants *may* enforce Ordinance 3941 against him.  *Compare id.* ¶¶ 63, 67, *with id.* ¶ 69.  Although these allegations are contradictory and demonstrate that Plaintiff has yet to suffer an actual injury, accepting his allegations as true and construing the Complaint in his favor, he nevertheless asserts injuries that are sufficiently imminent.

Not only is Plaintiff subject to Ordinance 3941 as a property owner of KGE, which Defendants do not dispute, if he rents the unit for a minimum of 30 days and advertises such a rental—which he argues he is entitled to do pursuant to the CC&R—he will violate the Ordinance and risk the imposition of penalties.  If Plaintiff continues to rent his property for a minimum of 30 days, in contravention of Ordinance 3941, it is not "unadorned speculation" to expect that the Ordinance will be enforced against him.  *Pennell*, 485 U.S. at 8 (citation omitted).  These circumstances constitute a sufficient threat of actual injury "to satisfy Art. III's

requirement that '[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'"  *Id.* (alteration in original) (citation and footnote omitted) (finding a sufficient threat of actual injury where there was a "likelihood of enforcement, with the concomitant probability that a landlord's rent will be reduced below what he or she would otherwise be able to obtain in the absence of the Ordinance").

     B.    <u>Fairly Traceable/Redressability</u>

The causation inquiry focuses on "whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (citations omitted).  In other words, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Id.* (citation omitted); *see Canyon County. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) (identifying "less rigorous" causation threshold at the dismissal stage of the proceedings).  When a "chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the

causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070 (citations omitted).

Plaintiff is also required to demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).

As already discussed, the threat of Plaintiff's alleged injuries is sufficiently imminent.  Because the injuries are fairly traceable to Defendants' challenged conduct—promulgation and enforcement of Ordinance 3941—and the injuries would be redressed by a determination that the Ordinance is unconstitutional, Plaintiff has satisfied the elements necessary to establish standing.  *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001).

## III.   Abstention

The Court raised, sua sponte, the issue of whether it should abstain from exercising jurisdiction pursuant to *Pullman* or *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  Federal courts may consider both *Pullman* and *Burford* abstention sua sponte.  *See Columbia Basin*, 268 F.3d at 802 (stating that it "may sua sponte consider *Pullman* abstention at any time" (citation omitted)); *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1998) ("It is well established that this court may raise the doctrines of *Burford* and *Pullman*

abstention sua sponte and that the failure of the parties to raise those doctrines at any point in the proceedings is no impediment to our consideration of the applicability of those doctrines." (footnote and citations omitted)); *Forde v. First Horizon Home Loan Corp.*, No. CIV 10-01922 PHX MEA, 2010 WL 5758614, at *2 (D. Ariz. Dec. 6, 2010) ("The propriety of Burford abstention may be raised sua sponte." (citations omitted)); *cf. Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020) ("We may raise abstention sua sponte." (citations omitted)).

Conflating ripeness and jurisdiction with abstention, Plaintiff argues that abstention is not warranted because he is entitled to bring his claims pursuant to federal question and diversity jurisdiction.  ECF No. 38 at 3–4.  Defendants argue that both abstention doctrines apply, though they believe *Burford* abstention is most appropriate.

A.   *Pullman* Abstention

The *Pullman* abstention doctrine, which the Court finds applicable under the facts of this case, authorizes district courts to postpone "the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).  "And it is not even necessary that the state adjudication 'obviate the need to decide all the federal

16

constitutional questions' as long as it will 'reduce the contours' of the litigation.

*Smelt v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006) (quoting *id.* at 380).

> *Pullman* abstention is appropriate where:
>
>> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014) (citation omitted); *see Smelt*, 447 F.3d 673, 679 (citation omitted).[3]  The Court lacks discretion to abstain when the foregoing requirements are not met.  *See Courtney v. Goltz*, 736 F.3d 1152, 1163 (9th Cir. 2013) (citation omitted).  The Court finds that the foregoing requirements are satisfied here.

Plaintiff asserts that *Pullman* abstention is improper because his claims are federal claims and *Knick v. Township of Scott*, __, U.S. __, 139 S. Ct. 2162 (2019), significantly impacts the abstention analysis.  ECF No. 38 at 4.  But Plaintiff's counsel conceded at the hearing that *Knick* did not abrogate the abstention doctrines or affect the applicable *Pullman* abstention factors.

---

[3]  "*Pullman* abstention applies whether or not a state proceeding is pending[.]" *Gilbertson v. Albright*, 381 F.3d 965, 970 n.6 (9th Cir. 2004).

In his Response to the Court's abstention inquiry, Plaintiff disregards the fact that five of his nine[4] claims are state law claims and he misinterprets the holding of *Knick*, which concerned ripeness, i.e., when a plaintiff can bring a takings claim under § 1983 in federal court. Plaintiff has not pointed to any cases—and the Court has not found any—adopting his interpretation of *Knick*. That a case is properly before a federal court does not deprive the court from abstaining in appropriate circumstances. *Knick* has not affected the Court's ability to apply *Pullman* here.

### 1. Sensitive Area of Social Policy

To begin, the Court acknowledges that civil rights claims are at issue. Because "[t]he Civil Rights Act protects property rights no less than individual liberties," "[f]ederal courts should be reluctant to abstain in civil rights cases regardless of the type of constitutional interest at stake; abstention can delay the redress of significant constitutional wrongs." *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985) (citations omitted). However, while the practical effect of abstention in such cases might "impose an exhaustion

---

[4] While Plaintiff asserts nine counts, there are only eight because Count I is for declaratory relief pursuant to § 2201, which is a remedy, not a standalone cause of action. *See County of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215–16 (N.D. Cal. 2017) ("The government correctly notes that the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action." (citation omitted)).

requirement not appropriate to 42 U.S.C. § 1983," abstention may nevertheless "be proper in a civil rights case to avoid unnecessary interference with an important state program." *Id.* (citations omitted). Indeed, "there is no *per se* civil rights exception to the abstention doctrine." *C-Y Dev. Co.*, 703 F.2d at 381 (citation omitted).

a.   <u>First Amendment Claim</u>

The United States Supreme Court has been reluctant to abstain in cases involving voting rights, racial equality, and First Amendment rights of expression, but not land use matters asserted under § 1983. *See C-Y Dev. Co.*, 703 F.2d at 381. One of Plaintiff's challenges to Ordinance 3941 is that it violates his First Amendment right to free speech. Generally, *Pullman* abstention is "inappropriate when First Amendment rights are at stake" "because the guarantee of free expression is always an area of particular federal concern." *Courthouse News*, 750 F.3d at 784 (citations omitted). But Plaintiff's First Amendment claim is not central to this litigation; it is merely one facet of his broader challenge to Ordinance 3941. Even Plaintiff has characterized this case as a takings action, both at the hearing and in his supplemental briefing. ECF No. 38 at 1 ("In his Complaint, Plaintiff alleges that the application of Ordinance No. 3941 (2014) to his property is effectively taking of the real property interests that were granted by the county of Maui and conveyed to him in recorded covenants.").

19

In any event, Plaintiff's First Amendment claim is not viable.  Plaintiff alleges that Ordinance 3941 penalizes speech "by imposing restrictions on the content of advertisements concerning the rental of real property on Maui."  Compl. ¶ 119.  However, Ordinance 3941 regulates commercial conduct, not speech. "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct.  [And] the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015).

The threshold question in determining if the First Amendment applies is "whether conduct with a 'significant expressive element' drew the legal remedy or the ordinance has the inevitable effect of 'singling out those engaged in expressive activity.'"  *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) ("*HomeAway III*") (citation omitted).  Courts may consider both the "inevitable effect of a statute on its face," as well as a statute's "stated purpose" but "may not conduct an inquiry into legislative purpose or motive beyond what is stated within the statute itself," absent limited circumstances.  *Id.* (citations omitted).

20

This case does not implicate the First Amendment because advertising unlawful vacation rentals is nonexpressive conduct.  Ordinance 3941 regulates short-term rentals and with respect to advertising, provides:

> B. Advertising that offers a property as a short-term rental home shall constitute prima facie evidence of the operation of a short-term rental home on the property and the burden of proof shall be on the owner, operator, or lessee of record to establish that the subject property is being used as a legal short-term rental home or is not in operation as a short-term rental home.
>
> C. Any communication by a property owner, operator, or lessee to any person where the owner, operator, or lessee offers their home for rent as a short-term rental home on the property shall constitute prima facie evidence of the operation of a short-term rental home on the property and the burden of proof shall be on the owner, operator, or lessee to establish that the subject property is being used as a legal short-term rental home or is not in operation as a short-term rental home.
>
> D. Advertising for a short-term rental home without a valid permit number is prohibited and constitutes a violation of this title and may result in enforcement action pursuant to section 19.530.030 of this title; provided that:
>
>> 1. The alleged violator and the property owner shall be notified that all advertising without a valid permit number shall be terminated within seven days of the notice.
>>
>> 2. Enforcement action, including fines, may commence pursuant to section 19.530.030 of this title if advertising without a valid permit number continues after such warning.

MCC § 19.65.080.  By their plain terms, the provisions at issue regulate conduct lacking a "significant expressive element"—the advertisement of short-term rentals

that are not validly permitted.  *See*, *e.g.*, *HomeAway III*, 918 F.3d at 685 (holding that "the Ordinance is plainly a housing and rental regulation.  The "'inevitable effect of the [Ordinance] on its face' is to regulate nonexpressive conduct— namely, booking transactions—not speech" (alteration in original) (citation omitted)); *Rentberry, Inc. v. City of Seattle*, 374 F. Supp. 3d 1056, 1063 (W.D. Wash. 2019) (finding a rental transaction to "lack a significant expressive element"); *Homeaway.com, Inc. v. City of Santa Monica*, Case Nos. 2:16-cv-06641-ODW (AFM), 2:16-cv-06645-ODW (AFM), 2018 WL 1281772, at *6 (C.D. Cal. Mar. 9, 2018) ("*HomeAway I*") (finding "that the conduct banned by the Ordinance—booking transactions for residential properties not listed on the City's registry—does not have such a 'significant expressive element' as to draw First Amendment protection"); *Airbnb, Inc. v. City & County of San Francisco*, 217 F. Supp. 3d 1066, 1076 (N.D. Cal. 2016) (finding that an ordinance restricting the booking of rentals for unregistered units—directed at commerce or conduct—was "not conduct with a significant expressive element" (citation omitted)); *Int'l Franchise Ass'n*, 803 F.3d at 408 (concluding that "[t]he conduct at issue—the decision of a franchisor and a franchisee to form a business relationship and their resulting business activities—'exhibits nothing that even the most vivid imagination might deem uniquely expressive'" (citation omitted)).  Indeed, Ordinance 3941 does not prohibit advertising altogether; it proscribes advertising

for unlawful short-term rentals and establishes that advertisements and/or communications offering a property as a short-term rental constitute prima facie evidence of the operation of a short-term rental home.

The purpose of Ordinance 3941 "is to establish a permitting process for short-term rental homes, subject to appropriate restrictions and standards." MCC § 19.65.010. The intent is "to implement land use policies consistent with the County's general plan and the State's land use laws; to retain the character of residential neighborhoods; to provide varied accommodations and experiences for visitors; and to allow small businesses to benefit from tourism." *Id.* Therefore, its implementation was "not motivated by a desire to suppress speech" and does not have "the effect of targeting expressive activity." *Int'l Franchise Ass'n*, 803 F.3d at 409. Instead, the only inevitable effect of Ordinance 3941 is to prohibit advertisements of unlawful short-term rental homes.

Ordinance 3941 also does not have the effect of "singling out those engaged in expressive activity." It regulates advertisements and communications about unlawful short-term rentals and imposes the burden of proving the legality of short-term rentals. That an incidental impact on speech might result does not subject Ordinance 3941 to scrutiny under the First Amendment. *See Int'l Franchise Ass'n*, 803 F.3d at 408 ("[S]ubjecting every incidental impact on speech to First Amendment scrutiny 'would lead to the absurd result that any government

23

action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment[.]'" (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986) (O'Connor, J., concurring))); *HomeAway III*, 918 F.3d at 686 (quoting *id.*).  "[T]o the extent that the speech chilled advertises unlawful rentals, '[a]ny First Amendment interest . . . is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.'"  *HomeAway III*, 918 F.3d at 686 (second and third alterations in original) (quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973)).

For these reasons, Plaintiff's First Amendment claim (Count VI) is DISMISSED.  *See Homeaway.com, Inc. v. City of Santa Monica*, Case Nos. 2:16-cv-06641-ODW (AFM), 2:16-cv-06645-ODW (AFM), 2018 WL 3013245, at *6–7 (C.D. Cal. June 14, 2018) ("*HomeAway II*"), *aff'd*, *HomeAway III*, 918 F.3d 676 (dismissing with prejudice the plaintiffs' First Amendment claims because "the First Amendment does not protect speech proposing an illegal transaction" and cannot be used as a shield "to communicate offers to rent illegal units" (citations omitted)).  Because no amendment could cure the claim's defects, the Court declines to authorize leave to amend.

24

b.     Land Use Is a Sensitive Area of Social Policy

The dismissal of Plaintiff's First Amendment claim eliminates concerns about the propriety of *Pullman* abstention.  Turning now to the crux of this action—whether Ordinance 3941 and/or its enforcement against Plaintiff results in an unconstitutional taking of his property—the Ninth Circuit has long "held that land-use planning questions 'touch a sensitive area of social policy' into which the federal courts should not lightly intrude."  *Columbia Basin*, 268 F.3d at 802 (citations omitted); *see also San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998); *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996); *Pearl Inv. Co.*, 774 F.2d at 1463–64; *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Summerland Cty. Water Dist.*, 767 F.2d 544, 546 (9th Cir. 1985); *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984); *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 839–40 (9th Cir. 1979); *Sederquist v. City of Tiburon*, 590 F.2d 278, 281 (9th Cir. 1978); *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094–95 (9th Cir. 1976).  Moreover, the short-term rental issue has been and continues to be a hot-button topic and a sensitive issue of social policy throughout the State.  *Cf. Kendrick v. Planning Dep't*, Civ. No. 19-00024 HG-KJM, 2020 WL 736245, at *7 (D. Haw. Feb. 13, 2020) (invoking *Burford* abstention and finding that "[p]olicies

25

governing residential vacation rentals are subject of significant local interest and important public policy"). Accordingly, the first factor is met.

2. Avoidance of Federal Constitutional Adjudication

The second factor requires "[a] state law question that has the potential of at least altering the nature of the federal constitutional questions." *C-Y Dev. Co.*, 703 F.2d at 378. "For *Pullman* purposes . . . it is sufficient if the state law issues might 'narrow' the federal constitutional questions." *Sinclair Oil*, 96 F.3d at 409 (citation omitted). The Ninth Circuit has consistently found this requirement satisfied in land use cases "where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks." *VH Prop. Corp. v. City of Rancho Palos Verdes*, 622 F. Supp. 2d 958, 963 (C.D. Cal. 2009).

The resolution of the state/municipal issues here can avoid or narrow the adjudication of the federal constitutional issues.[5] Indeed, Plaintiff has admitted that if his property rights are grandfathered and/or KGE is not subject to Ordinance 3941, his constitutional claims would no longer be at issue and this case would end. *See* ECF No. 34 at 2. As earlier discussed, Plaintiff mischaracterizes all of his claims as federal in order to avoid the application of *Pullman* abstention. ECF

---

[5] Although the federal and Hawaiʻi constitutional claims would likely be evaluated similarly, *see Cammack v. Waihee*, 932 F.2d 765, 767–68 nn.4–5 (9th Cir. 1991), this is not a basis to refrain from abstaining here, where decisions on other state law issues could narrow or dispose of the federal constitutional issues.

No. 38 at 4.  But even if Plaintiff's characterizations were accurate, the federal claims turn on underlying questions of state law, the resolution of which could obviate the need for a determination of federal constitutional questions.  *See Sederquist*, 590 F.2d at 282 (citation omitted).  The second requirement is therefore satisfied.

### 3.   Uncertainty of Determinative State Law Issues

The third *Pullman* factor can be satisfied in land use cases with "only a minimal showing of uncertainty" because "land use claims are local in nature and involve the interpretation of various state and local land use laws[.]"  *Patel v. City of Los Angeles*, 455 F. App'x 743, 744–45 (9th Cir. 2011) (citing *Sinclair Oil*, 96 F.3d at 409–10; *Pearl Inv. Co.*, 774 F.2d 1460, 1465 (9th Cir. 1985)).  "Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law."  *Pearl Inv. Co.*, 774 F.2d at 1465 (citation omitted).  Resolution of state law issues "might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court."  *Id.*

Plaintiff interprets *Pullman* abstention to literally require the implication of *state* (versus municipal) law.  ECF No. 38 at 5 ("The State of Hawaii does not regulate short term rentals of less than 180 days.  Each County has its own zoning

ordinances, Oahu regulates rental of less than 30 days.  The Maui County zoning Ordinance No. 3941 . . . is not state law.  The State of Hawaii does not have any interest[6] in having its Courts decide the application of a County ordinance being applied in violation of the US [sic] Constitution.").  But the governing case law cited herein demonstrates that "state law" considerations encompass municipal ordinances and rules.[7]  Moreover, Plaintiff invokes state law (Counts III, V, and VII to IX) in challenging Ordinance 3941.  Central to this challenge is that Ordinance 3941's "grandfathering" provision violates Hawaii's Zoning Enabling Act, HRS § 46-4.  Compl. ¶¶ 126–130.

Here, the Court cannot predict with any confidence how Hawaii's courts would decide Plaintiff's state law challenges to Ordinance 3941.  *See, e.g.*, *Richardson v. Koshiba*, 693 F.2d 911, 917 (9th Cir. 1982) (finding "no substantial indication of how Hawaii's courts would treat [the plaintiff's] state law claims").  Indeed, the applicable land use regulatory scheme is complicated, and the state law issues are novel and sufficiently important such that they should be addressed by

---

[6]  A state's interest is not part of the inquiry.

[7]  "When a court abstains in order to avoid unnecessary constitutional adjudication . . . it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state *(including local)* legislatures."  *San Remo Hotel*, 145 F.3d at 1105 (emphasis added) (citation omitted).

the state courts first.  For these reasons, the Court finds that the third requirement is met.

Because the three requirements are satisfied, the Court finds it appropriate to abstain under *Pullman*.[8]  "A district court abstaining under *Pullman* must dismiss the state law claim and stay its proceedings on the constitutional question until a state court has resolved the state issue."  *Cedar Shake & Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993); *see Courtney*, 736 F.3d at 1164 (holding that "the district court should have retained jurisdiction over the case pending resolution of the state law issues, rather than dismissing the case without prejudice"); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) ("If a court invokes *Pullman* abstention, it should stay the federal constitutional question 'until the matter has been sent to state court for a determination of the uncertain state law issue.'" (citation and footnote omitted)); *Columbia Basin*, 268 F.3d at 802 ("If we abstain 'under *Pullman*, retention of jurisdiction, and not dismissal of the action, is the proper course.'" (quoting *Santa Fe Land Improvement Co.*, 596 F.2d at 841)).

The Court therefore dismisses the state law claims (Counts III, V, and VII to IX), and stays the remaining federal claims (Counts I, II, and IV).  Plaintiff may

---

[8]  Given this determination, the Court need not address whether to abstain under *Burford*.

refile the state law claims in circuit court.  *See San Remo Hotel*, 145 F.3d at 1104

("Once *Pullman* abstention is invoked by the federal court, the federal plaintiff

must then seek a definitive ruling in the state courts on the state law questions

before returning to the federal forum." (citing *Pullman*, 312 U.S. at 501–02;

*Rancho Palos Verdes Corp.*, 547 F.2d at 1096)).  The dismissal of the state law

claims does not constitute a determination on the merits on any of the grounds

advanced in the present Motion.

<u>CONCLUSION</u>

In accordance with the foregoing, Defendants' Motion is GRANTED IN

PART AND DENIED IN PART.  Plaintiff's state law claims (Counts III, V, and

VII to IX) are DISMISSED for resolution in state court.  Plaintiff's First

Amendment claim (Count VI) is DISMISSED.  The balance of the Motion is

DENIED.  This case—comprised of the remaining federal claims (Counts I, II, and

IV)—is STAYED until the state court's determination of Plaintiff's claims related

to Ordinance 3941.  All pending deadlines are terminated.

Plaintiff may return to this forum after the state law questions are answered.

The parties are to submit a joint status report every six months, beginning on

December 1, 2020.  The parties shall file a notice within seven days of the

conclusion of the state court proceedings, attaching any relevant decision(s) and

indicating whether the instant proceedings should recommence.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, June 12, 2020.




Jill A. Otake
United States District Judge

CIVIL NO. 19-00654 JAO-RT; *Tran v. Dep't of Planning for the County of Maui, et al.*;
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND (2)
STAYING THE ACTION